IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | 1:13CR255-2 |
| | : | |
| JERMAINE LONNIE BAINES | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

NOW COMES the United States of America, by and through Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, and responds to Defendant Jermaine Lonnie Baines' ("Baines") compassionate release motion (Docket Entry ["Dkt."] #214), and this Court's Text Order dated January 25, 2022.

### History and Prior Proceedings

Undercover federal agents posing as couriers for a Mexican drug cartel recorded Baines and his co-defendants as they planned the robbery of a drug stash house. Baines was going to bring a gun and murder anyone guarding the drugs. (*See* Dkt. #128, PSR ¶12) ("Jermaine Lonnie Baines responded that it would be cleaner if they just killed everyone associated with the drug stash house."); (*Id.*, PSR ¶21) ("Brian Allen Thornton and Jermaine Lonnie Baines both stated they were going to shoot the individuals inside the stash house who

were guarding the cocaine while the CI gathered the drugs."); and (*Id.*, PSR ¶22) ("Brian Allen Thornton expressed concern about the possibility of more Mexicans who were unaccounted for interfering with them as they left the stash house. Jermaine Lonnie Baines indicated that he was just going to kill the Mexicans when they went into the house.").

The group expected to steal kilogram quantities of pure cocaine (*Id.*, PSR ¶17), which they were going to cut into larger quantities and sell. (*Id.*, PSR ¶21).

Baines and his co-defendant Thornton also discussed robbing and killing the undercover agents who were their partners in the robbery. (*Id.*, PSR ¶22) ("Brian Allen Thornton and Jermaine Lonnie Baines then discussed the option of killing 'Shawn' and 'Rob.'" [the undercover agents]).

Baines and his co-defendants were arrested after they showed up to attempt the robbery. (*Id.*, PSR ¶33). At the time of their arrest, the group was armed with firearms. (*Id.*).

Baines pled guilty pursuant to a plea agreement to conspiracy to interfere with commerce by robbery and possession of firearms in furtherance of a crime of violence and a drug trafficking crime. (*See* Dkt. #128, PSR ¶3). His Presentence Investigation Report applied the career offender enhancement. (*Id.* at ¶48). This Court sentenced him to a total prison term of 262 months. (Dkt. #77).

2

Baines' conviction and sentence were affirmed on direct appeal. *United States v. Baines*, 597 F. App'x 156 (4th Cir. 2015). This Court subsequently denied Baines' post-conviction motions, including his motion pursuant to Section 2255. (*See* Dkt. #198).

On December 10, 2021, Baines filed the instant motion for compassionate release. (Dkt. #214). This Court ordered the government to respond and address the following issues:

> Defendant's co-defendants had their 924(c) convictions vacated after United States v. Davis and were resentenced (at which time co-defendant Thornton was no longer a career offender and received a 120-month sentence); yet Defendant pled guilty to the superseding indictment and cannot benefit from Davis and the related resentencing (at which time it would appear he, too, would no longer be a career offender). As a result, Defendant is serving a 262-month sentence while his co-defendant Thornton is serving a 120-month sentence. As Defendant describes it, his sentence is inherently unfair and unjust "especially in relation to his co-defendants who[] brought [him] into the conspiracy and have had their sentences reduced." Finally, despite his lengthy felonious criminal history including a federal conviction, Defendant alleges to have spent his time in the custody of the Bureau of Prisons on worthwhile endeavors.

(Text Order of Jan. 25, 2022).

Baines is currently in BOP custody at USP Hazelton, located in West Virginia. Baines is scheduled for release (including credit for good conduct time) on April 3, 2032. *See* BOP Inmate Locator, at https://www.bop.gov/inmateloc/ (last accessed February 9, 2022).

3

## Summary

Baines' co-defendants had portions of their convictions vacated based on changes to the law. Baines' conviction remains valid. When compared to them, Baines appears sympathetic. However, when compared against his history and conduct, a lengthy sentence is still justified.

This Court has the authority to order Baines' early release. Any sentence reduction must be based on extraordinary and compelling reasons and be consistent with the § 3553(a) factors.

## Discussion

Under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A)(i), the district court may modify or reduce an inmate's sentence "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). If this condition is met and the motion is properly before the district court, the court must also find, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, that "extraordinary and compelling reasons warrant a reduction" of the defendant's sentence.

4

Because the Sentencing Commission has not yet updated its policy statement since the passage of the First Step Act in December 2018, the existing policy statement "provides helpful guidance," but "does not constrain the Court's independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (internal citation omitted).

In *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020), the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by defendants under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* at 281–84. In place of the no-longer-applicable policy statement, *McCoy* permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[...]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" *Id.* at 284.

*McCoy* noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants." *Id.* at 282 n.7. In stating as such, *McCoy* approvingly cited the Seventh Circuit's recent decision in *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020), which similarly held that there currently exists no applicable policy statement for compassionate release motions brought by defendants. Nonetheless, the Seventh Circuit explained that § 1B1.13 remains useful in framing a court's inquiry as to what constitutes

5

"extraordinary and compelling reasons." As it stated,

> [t]he statute itself sets the standard: only "extraordinary and compelling reasons" justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii). The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive.

*Id.* (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007)). Thus, although *McCoy* broadened district courts' discretion under § 3582(c)(1)(A), it envisions a system whereby courts remain confined within a traditional discretionary framework.

In its broadest terms, *McCoy* thus holds that although § 1B1.13 is no longer the applicable policy statement for compassionate release motions brought by inmates, defendants still must meet the "heightened standard" required by § 3582(c)(1)(A)(i). Both before and after *McCoy*, defendants must clear the "extraordinary and compelling" threshold set forth in the statute. As *McCoy* put it, such relief will be granted in "truly exceptional cases[.]" *Id.* In other words, the defendant must present circumstances that are "[b]eyond what is usual, customary, regular, or common," Extraordinary, *Black's Law Dictionary* (11th ed. 2019).

In this case, Baines' sentence, though lengthy, is both legally valid and supported by his history and conduct. As this Court noted in its Text Order,

6

Baines contends that his sentence is inherently unfair and unjust "especially in relation to his co-defendants who[] brought [him] into the conspiracy and have had their sentences reduced." (Text Order of Jan. 25, 2022).

With respect to the offense conduct, it is true that Baines was brought into the conspiracy. The PSR describes a phone call between an undercover agent and co-defendant Thornton. "Toward the end of the phone call, Brian Allen Thornton brought Jermaine Lonnie Baines over to listen in on the conversation." (Dkt. #128, PSR ¶10). However, once aware of the criminal opportunity, Baines was both a willing and eager participant. Baines went alone to the first in-person meeting with the undercover agents. (Dkt. #128, PSR ¶11). Thornton was not present. Baines was also the one who first brought up the idea of killing people during the robbery. (Dkt. #128, PSR ¶12). As described above, Baines reiterated his willingness to kill on multiple occasions during the course of the conspiracy.

After their arrest, Baines and his two co-defendants were all charged in a two-count Indictment. (Dkt. #18). Both co-defendants immediately pled guilty. In contrast, Baines rejected his plea offer, causing the government to seek a superseding Indictment in preparation for trial. (*See* Sentencing Transcript, Dkt. #91 at p. 14) ("THE DEFENDANT: … they say they was going to give me 0- to 25-year plea bargain. I turned that down because I knew I didn't -- I didn't possess that firearm when I got arrested. I turned that down.

7

So when I turned that down, they superseded my indictment, you know, after I had been indicted on two charges -- original charges."). As a result of changes in the superseding Indictment, Baines admitted more at the time of his later plea than his co-defendants, specifically that he possessed a firearm in furtherance of both the attempted robbery and a drug trafficking offense. The magistrate judge recognized in recommending the denial of Baines' Section 2255 motion that this additional admission was material and made his case factually distinct from his co-defendants. (*See* Dkt. #190, Report and Recommendation) ("Petitioner's § 924(c) conviction is thus materially different from the convictions of his co-defendants and he is not similarly situated to them.").

Parties negotiate based on the law as it exists at the time, and retroactive changes in the law do not always have a uniform impact on past decisions. There is a large and complex body of statutory and common law about the extent to which a defendant who has already been sentenced can take advantage of changes to the law that occur after he is sentenced. Compassionate-release requests are not designed as vehicles to bypass that body of law.

In this case, Baines' co-defendants received an unanticipated break and he did not. The government recognizes that this difference places Baines in a sympathetic light, particularly given that his underlying conviction of

8

conspiracy to commit Hobbs Act robbery would not result in a career offender guideline range if sentenced today.[1] Unlike his co-defendants, however, Baines faced an additional drug charge which carried a mandatory ten-year sentence. The lengthy sentence he ultimately received is not extraordinarily unfair in light of his criminal history and offense conduct.

Nor is Baines' post-conviction conduct extraordinarily mitigating. This Court notes in its Text Order that the "Defendant alleges to have spent his time in the custody of the Bureau of Prisons on worthwhile endeavors." The government has obtained BOP records showing that the defendant has, during his nearly eight years in custody, completed several classes. (*See* Attachment A). Baines' participation in classes, though positive, is neither unusual nor a guarantee of his rehabilitation. In fact, the BOP records appear to show that Baines has taken far fewer class hours now than when he was incarcerated for his first federal conviction and was studying for his GED. (*See* Attachment A, p. 2). BOP records also show that Baines has accumulated several disciplinary infractions during his instant incarceration. (*See* Attachment B). Taken as a whole, the government suggests that Baines' conduct while in custody does not rise to the level of an "extraordinary and compelling" reason for his release. As one district court persuasively stated, "prisoners are supposed to follow the

---

[1] Though his guideline range would likely be higher than his co-defendants' as a result of his still-valid Section 924(c) conviction.

rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary...." *United States v. Logan*, 2021 WL 1221481, at *5 (D. Minn. Apr. 1, 2021) (Schlitz, J.).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence, only after considering the factors set forth in 18 U.S.C. § 3553(a), including whether the defendant presents a risk of danger to the community. Here, these factors counsel against granting a reduction to Baines, even were the court to find extraordinary and compelling reasons. Given his history of illegal firearm possession and the violent nature of his offense, the government submits that Baines presents an ongoing risk of danger to the community.

10

## CONCLUSION

WHEREFORE, as set forth herein, the government requests that the Court deny the motion for compassionate release.

This, the 9th day of February, 2022.

                                         Respectfully submitted,

                                         SANDRA J. HAIRSTON
                                         United States Attorney

                                         /S/ KYLE DAVID POUSSON
                                         Assistant United States Attorney
                                         NCSB #38437
                                         United States Attorney's Office
                                         Middle District of North Carolina
                                         101 S. Edgeworth St., 4th Floor
                                         Greensboro, NC  27401
                                         Phone:  336/333-5351

CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and a copy was mailed to Defendant, as follows:

JERMAINE LONNIE BAINES
REGISTER #20337-057
USP HAZELTON
U.S. PENITENTIARY
P.O. BOX 2000
BRUCETON MILLS, WV  26525

/S/ KYLE DAVID POUSSON
Assistant United States Attorney
NCSB #38437
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC  27401
Phone:  336/333-5351