① Jermaine Baines
v.
United States of America

Response to Government's motion to reduce sentence Pursuant to U.S.C. §3582(C)(A)

## History and Prior Proceedings

October 5, 2012 ATF along with force officers from the Durham Police Dept interviewed a confidential informant regarding a barber shop in Durham. During the interview, the CI told officers that "Brian Thornton" and others sold narcotics from the shop. The C.I said that "Thornton was also involved in armed robberies of drug dealers. The CI agreed to participate in controlled purchases of narcotics from "Thornton" and others at the barber shop and not from "Baines". Oct 23, 2012 the ATF utilizing the CI, purchased approximately five grams of Heroin from "Thornton". Another individual was present during the transaction and talked to the "CI" about robbing drug dealers (not Baines). November 9, 2012 ATF utilizing the "CI" attempted to purchase 1 1/4 ounces of crack cocaine from another individual at the barber shop ("again not Baines"). Thornton talked about following the CI back to his person and robbing him. March 19, 2013 the CI spoke with law enforcement about "Thornton" asking him if he knew of "a lick" that he could participate in. "Shawn and Rob" agreed to go undercover as couriers for a group of Mexican drug dealers who had a drug stash house in Durham N.C. March 20th, 2013

(2)

ATF Monitored a meeting between the CI and Thornton. During this meeting CI was equipped with a hidden body wire which recorded the conversation. During their conversation, the CI told Thornton that he had been approached by friends who knew of a drug dealer they could rob. The "CI" then called "Shawn" (ATF agent) This phone call was made on speaker phone in the presence of "Thornton". During this call "Shawn" told "Thornton" that he worked for "Mexican drug dealers, and "Thornton agreed to meet "Shawn" to talk about the robbery in person. Towards the end of the phone call "Thornton" brought another individual, later determined to be me (Jermaine Baines) over to listen in on the conversation. After the call, the CI discussed the robbery plan with "Thornton and "Baines". One of the individuals (either "Thornton or "Baines") can be heard on the recording stating that "Shawn could drive them to the robbery while they "ran up in there. The "CI" told "Thornton that he would contact "him" when "Shawn was in town. March 28th, 2013 The "CI" contact me (Baines) and set up a meeting between me, him and "Shawn" due to Thornton being in Raleigh N.C that day. What the Government "never" brung to the light is that "we" all knew each other prior to all of this.... ATF would send the "CI" to pick me up I told my lawyer that their was a lot of conversations that was never

Case 1:13-cr-00255-NCT  Document 218  Filed 02/23/22  Page 2 of 14

mention in which the "CI" told us what to say that would have the "ATF" agents wanting us to pull off this robbery. April 2nd "Baines suffered from a "Stroke" and was hospitalized and the "CI" came to the hospital to see me along with "Thornton" April 3rd, 2013 "CI, Shawn, Rob" met "Thornton at a McDonalds in downtown Durham. The "CI" called me and I informed him that I was in the hospital. April 4th, 2013 "CI" placed a call to ATF agents that "He" had just come by his residents (Thornton) and ask him to come to his vehicle to see something. He "CI" said once inside the vehicle Thornton produced two semi-automatic handguns. The "CI" stated that "Thornton told him that he had obtained the firearms to use durning the robbery. Apirl 11th 2013. ATF agents sent "CI" to pick Baines up to met with them and "Thornton at a "Home Depot on North Point Drive in Durham, N.C. In preparation for this meeting the "CI" vehicle was wired with video recording equipment. In addition, the "CI" and one of the undercover special agents were wired with hidden body wires to record the conversation. It was this day when "Shawn and Rob" review details about the Stash House. "Rob" indicates that the "Cocaine is straight from "Mexico and Pure". We both agreed to their plans of robbing the Stash house. I told my codefendant that I didn't feel right with everything so I wasnt gonna do it.

(4)

The First attempt to arrest us was on April 10th, 2013. The "CI" was instructed to inform "ATF" prior to arrival if we had possessed firearms. The "CI" told him "Shawn" that we could not obtain any guns to commit the robbery. "Shawn and Rob" departed and left the meet location. May 20th 2013 The "CI" called me and "Thornton" B/c he was on the News for robbing a store in Winston Salem N.C. I told my lawyer about this and he did nothing. May 22nd, 2013 "Shawn" met with all of us again at an Arby's restaurant in Durham. In preparation for this meeting "Shawn" was equipped with hidden body wire to record the conversation. "Shawn" told "Baines and Thornton" that he was "disappointed" with "us" because we were unprepared for the robbery the last time we met (didn't have any firearms). "Shawn" stated that him and "Rob" were still involved with obtaining "Kilos of cocaine from the stash house. The "CI" said that he believed that "Thornton was in debt to his heroin supplier for losing a large quantity of heroin he had received on a front and was "motivated to commit the robbery so he could pay off his debt. "CI" said "Thornton told him he needed the money from selling the "cocaine as soon as he could get it and he told the "CI" that he looked forward to getting ahead. June 4th 2013 ATF and

(5)

and DPD personnel attempted to arrest "Thornton and Baines". In preparation, the "CI" vehicle was equipped with audio and video recording devices. In addition to this "Shawn and "CI" were equipped with hidden body wires. Nothing is mention where "Shawn" offered me a gun to use before I went "back home" to get a gun". I didn't want to do it so I gave my gun to DeCarlos "Trayveon". My lawyer theys that I told him that I gave my gun to "Trayveon" and he got ~~xxxx~~ "captured" with two guns on his "person" and one we in "Thornton" vehicle upon our arrest. In our statements recorded "Thornton" admitted to the gun found in his vehicle and two was found on "Trayveon Spain" person... Their was three firearm taken at the time of our arrest. I gave this system the best years of my life and it forced me to change my life, b/c I was heading down a dark road. I've learnt my lesson that I need to be productive in active in society. I can ~~xxxx~~ identify. The "D.A" said it herself. If I was sentence today I would no longer be a "career offender". This was a conspiracy that was a "tawdry practices rendering this sentence no longer conscionable or consistent reputable law enforcement tactics. "Baines" sentence is injustice and unfair especially in relations to his codefent the "facts" of this case... I did do anything different then them in sense of

our crime." I was superceed because my codefents took a plea when I turned the 1st plea down at first... then mail Mr. Poussan a copy of a signed plea agreement before he moved to supersede my indictment. Micah Huggin told me that I would be getting the same plea that my codefendant recieved due to me mailing a signed copy to Mr. Poussan office Sept, 2013... Mr. Huggins adviced me to take the plea due to the government dismissing all remainning counts. He advised me that the drug was nolong apart of my 924(c), that why I took the plea expecting the same plea that my codefendant had taken. Respectfully submitted By Jermaine Baines with facts stating that I have a job upon my Release and I can have my community write letters on my behave if needed be ... I will work and/or go to school to farter my education upon release and continue to go to groups for treatment with mental health and drug treatment. "Baines ask this court that sentenced me back in 2014 to be just and for with the fact of this case and look at everybody conduct as a whole. Respectfully Submitted on this date Feb, 17th 2022 by Jermaine Lonnie Baines

signed by: _____ 2/17/2022

1:13cr255-2

P.S I also foward all my "Challenge Program" hour and classes before hand...



# CERTIFICATE OF COMPLETION

AWARDED TO

## JERMAINE BAINES

20337-057

For successful completion of the

### SPIRIT OF MAN

Awarded this 18th Day of September 2018

*R. Godinez Counselor*
Presenter Name and Title

# Certificate of Completion

*Presented to*

## JERMAINE BAINES

On this 10th day of July 2018

*For successfully completing*

## FOUR CONVERSATIONS ABOUT FORGIVENESS

*"Four Conversation About Forgiveness" is a ten-hour course designed to encourage participants to think and talk about forgiveness, with the hope that this will bring about meaningful change in attitudes and behaviors.*

Facilitated by _____
N. Middleton, Supervisory Chaplain

# CERTIFICATE OF COMPLETION



Drug Education Program

This certificate is presented to

## Baines, Jermaine

for successfully completing FCI Williamsburg's Drug Education Program.

_S. Rogers, DTS_         _October 2, 2015_
Dr. S. Rogers, Drug Treatment Specialist       October 2, 2015



# Pee Dee Healthy Start

## Healthy Marriage & Relationship Education

THIS CERTIFICATE IS AWARDED TO

*Jermaine L. Baines*

FOR SUCCESSFULLY COMPLETING

WITHIN *My Reach* ®

WORKSHOP WITH PERFECT ATTENDANCE

ON THIS 22ND DAY OF FEBRUARY 2018

*Madie A Robinson*

MADIE A ROBINSON
EXECUTIVE DIRECTOR OF PEE DEE HEALTHY START

# CERTIFICATE OF COMPLETION

is hereby granted to

# Baines, Jermaine

to certify that he has completed to satisfaction

New Beginnings: National Crime Victim's Rights Week Course

Granted: April 13, 2018

*Dr. S. Rogers, DTS*
―――――――――――――――――――
Dr. S. Rogers, Drug Treatment Specialist



# CERTIFICATE OF COMPLETION

is hereby granted to

# Baines, Jermaine

to certify that he has completed the

## Alcohol Awareness Course

Granted: April 30, 2018

*Dr. S. Rogers, DTS*

Dr. S. Rogers, Drug Treatment Specialist