IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13CR255-2 |
| | ) | |
| JERMAINE LONNIE BAINES | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Jermaine Lonnie Baines' pro se Motion for Appointment of Counsel to Perfect a Compassionate Release/Reduction in Sentence Motion Under § 3582(c)(1)(A)(i) [Doc. #214] which is treated as both a motion for appointment of counsel and a motion made pursuant to 18 U.S.C. 3582(c)(1)(A)(i). The crux of Baines' motion is what he describes as inherent unfairness and injustice stemming from the former practice of federal agents who would involve individuals in the robbery of fake stash houses, as happened to him.[1] For the reasons stated below, his motion is denied.

As an initial matter, the Sixth Amendment right to counsel does not extend beyond the first appeal of right. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In exceptional circumstances, due process may require appointment of counsel in certain postconviction proceedings, but Baines' instant motion is not

---

[1] In further support of his motion, Baines replied to the Government's response and also provided evidence of his post-sentencing conduct. (Suppl. [Docs. #216-17]; Resp. to Gov't's Mot. ("Def.'s Reply") [Doc. #218].)

among those. See United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (denying appointment of counsel for § 3582(c) motion to reduce sentence). Cf. 18 U.S.C. § 3006A(a)(2)(B) (authorizing the court to provide counsel to a financially eligible person seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 when "the interests of justice so require"). Accordingly, his request for appointment of counsel is denied.

Baines was sentenced to 202 months' imprisonment for conspiracy to commit Hobbs Act robbery followed by 60 months for possessing a firearm in furtherance of a crime of violence and a drug trafficking offense. "The court may not modify a term of imprisonment once it has been imposed except", as is relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(c)(1)(A). But "§ 3582(c)(1)(A)'s threshold requirement is non-jurisdictional and thus subject to waiver." United States v. Muhammad, 16 F.4th 126, 129 (4th 2021). In its response to Baines's motion, the Government does not address whether he complied with the threshold requirement.[2] Therefore, the analysis proceeds to the next step.

---

[2] The Government was asked to respond to Baines's motion and address several issues relating to the sentences of Baines and his co-defendants and his post-sentencing conduct. (Text Order (Jan. 25, 2022).) The Government could have also addressed the threshold requirement, but chose not to do so.

Baines must meet his burden of showing that extraordinary and compelling reasons warrant a sentence reduction, see 18 U.S.C. § 3582(c)(1)(A)(i), and this he has not done. See United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (finding "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," "empower[ing]" courts "to consider any extraordinary and compelling reason for release that a defendant might raise") (citation omitted); U.S. Sentencing Guideline § 1B1.13, Application n.1 (providing circumstances found to be extraordinary and compelling) cited in McCoy, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants").

Baines claims that the case against him "was fabricated" and his "sentence driven by the government's decisions in what type of drugs and what quantity would be in the fake stash house." According to Baines, his "prosecution and conviction are a result of a former practice used by the ATF of engaging in sting operations where undercover agents provided individuals with the opportunity to rob drug stash houses that did not exist." He cites two district court opinions that strongly criticize this practice, and he contends that his "sentence was based in part, on a 'fictious' quantity of drugs in this fake stash house, which was then used to make [him] a career offender and raise the sentencing guidelines."

Baines was involved in a conspiracy to rob (non-existent) drug dealers associated with a (non-existent) stash house, as described more fully below. So, too, were defendants in the cases he cites. However, not only were the

3

defendants in those cases not similarly situated to Baines, but the facts of those cases are distinguishable from those underlying Baines's conviction. For example, in one case, the defendants were "people who but for the government's scheme might not have entered the world of major felonies" and "[i]ndeed, their minimal criminal histories suggests that they would not have." United States v. Paxton, No. 13CR0103, 2018 WL 4504160, at *1 (N.D. Ill. Sept. 20, 2018). In Paxton, a confidential informant working with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") informed Paxton "that he was considering arranging the robbery of a cocaine supplier who was associated with a Mexican drug cartel" and Paxton "rose to the bait". Id. at *2. However, there was "nothing in the record to indicate that [Paxton] was in the business, or had any prior experience, of robbing stash houses or drug dealers, or any arrests or convictions for drug dealing at all." Id.

The facts here are easily distinguishable. A confidential informant ("CI") was working with ATF agents and local law enforcement in their investigation of the sale of narcotics by Brian Allen Thornton (one of Baines's co-defendants) and others out of a barber shop in Durham, North Carolina. The CI told agents that Thornton was involved in armed robberies and "was known to set up and participate in armed robberies of drug dealers." During a series of controlled purchases by the CI from Thornton, Thornton and others discussed robbing drug dealers and the CI's money supplier and he asked if the CI knew of any "lick" (a slang reference to a robbery) he could participate in. Only then did ATF agents

4

agree to go undercover as couriers for a group of Mexican drug dealers who had a stash house in Durham; they would act discontent and willing to allow Thornton to rob their employees during a pick-up from the stash house. (Presentence Report ¶¶ 6-9.)

When the CI reported back to Thornton that he knew whom they could rob, he spoke not only with Thornton, but with Baines, as well. At this point, Baines began playing an active role in the planned robbery. During a meeting with the CI and one of the undercover agents, Baines asked if they should kill the Mexicans with the drugs, said it would be cleaner if they killed everyone associated with the stash house, spoke about participating in previous robberies and his willingness to participate in this one, stated that he was familiar with how the Mexicans ran their drug operations, and informed them that he had previously served time in federal prison. (Id. ¶¶ 10-12.)

At another meeting with the CI and the two undercover agents, Baines and Thornton again stated their willingness to participate in the robbery of the stash house, discussed how they planned to commit the robbery and each person's role, stated they were going to shoot the individuals inside who were guarding the cocaine, and discussed cutting the cocaine to resell. Baines told the agents that this robbery was easy because he was used to kicking in doors and laying the whole house down while snatching individuals out of rooms. After the agents left the meeting, the CI, Thornton, and Baines continued discussing the robbery. Baines stated that when they went into the house, he was going to kill the

5

Mexicans, and he and Thornton discussed the option of killing the two agents. As the CI drove Baines back home after the meeting, Baines told the CI that he was "not playing" when he went into the stash house and if anyone moved the wrong way, he was going to be "killing." As plans for the robbery continued, Baines remained actively involved. (Id. ¶¶ 19-30; see also id. ¶¶ 13-18.)

Not only did the ATF agents not devise the stash house robbery scheme until after Thornton asked the CI if there were a robbery in which he could participate, but Baines willingly joined and actively participated in the plan to commit robbery. He claims that his case was fabricated; while the target of the robbery was a fictitious stash house, Baines' criminal conduct in conspiring to commit the robbery was very real. He pled guilty because he was "in fact, guilty", he did not argue otherwise in his appeal to the Fourth Circuit Court of Appeals, and that court "reviewed the remainder of the record in [the] case and . . . found no meritorious issues for appeal." (See generally Tr. of Change of Plea Hr'g [Doc. #90]; United States v. Baines, No. 14-4411 [Doc. #96].)

Furthermore, unlike the defendants in the cases he cites, Baines had a lengthy criminal history, including convictions for drugs, firearms, and burglary, at the time he committed the instant offenses. He was convicted in 1991 for felony possession with intent to sell and deliver cocaine and felony possession of a weapon of mass destruction for which he received five years' imprisonment, suspended, and three years' probation which was revoked at which time he served his five-year prison sentence. And after he was paroled, his parole was revoked.

6

(Id. ¶ 54.) In 1994, he was convicted of felony possession with intent to sell and deliver cocaine and felony sale and delivery of cocaine, received six years' imprisonment, suspended, and five years' probation, which was revoked at which time he served his six-year prison sentence. And after he was paroled, his parole was revoked. (Id. ¶ 56.)

Three years later, he was convicted of felony possession of heroin and felony possession of a firearm by a felon and ultimately elected to serve his 13- to 16- month term of imprisonment. (Id. ¶ 59.) In 1998, he was convicted of felony possession with intent to manufacture/sell/deliver cocaine and felony possession of a stolen vehicle. (Id. ¶¶ 61, 62.) Two years later, he was convicted in this district of possessing a firearm as a felon and sentenced to 86 months' imprisonment and three years' supervised release, which was revoked at which time he served an additional 24 months' imprisonment. (Id. ¶ 63.) While on federal supervised release, he conspired to commit burglary and was sentenced to 41 to 59 months' imprisonment. (Id. ¶ 64.) Baines's criminal history put him in category VI, even without his career offender status adjustment. (Id. ¶ 66.) In sum, Baines and the facts of this case are easily distinguishable from the defendants and the facts of their cases in the opinions he cites.

Next, Baines argues that his sentence is unfair and unjust because his co-defendants, who brought him into the conspiracy, had their sentences reduced. However, that is not a precise description of events. Not only was Baines an

7

active participant in the conspiracy, but, as the Magistrate Judge explained when he addressed Baines' motion pursuant to 28 U.S.C. § 2255,

> [Baines] and his co-defendants were <u>initially indicted</u> on the same counts. This <u>included a § 924(c) count in which there was only one predicate offense: conspiracy to commit Hobbs Act robbery</u>. [Baines's] co-defendants pled guilty to the § 924(c) count in this initial indictment. After [Baines's] co-defendants pled guilty, the Government filed a superseding indictment as to [Baines] only. <u>The § 924(c) count in the superseding indictment contained an additional predicate offense: conspiracy to distribute cocaine hydrochloride. [Baines] pled guilty to the § 924(c) count contained in the superseding indictment</u>. [His] § 924(c) conviction is thus materially different from the convictions of his co-defendants and he is not similarly situated to them.

(Order & Recommendation at 7 n.5 [Doc. #190] (internal citations omitted) (emphasis added).)

As the Government describes it,

> After their arrest, Baines and his two co-defendants were all charged in a two-count Indictment. (Dkt. #18). Both co-defendants immediately pled guilty. In contrast, Baines rejected his plea offer, causing the government to seek a superseding Indictment in preparation for trial. (*See* Sentencing Transcript, Dkt. #91 at p. 14) ("THE DEFENDANT: . . . they say they was going to give me 0- to 25-year plea bargain. I turned that down because I knew I didn't – I didn't possess that firearm when I got arrested. I turned that down. So when I turned that down, they superseded my indictment, you know, after I had been indicted on two charges – original charges."). As a result of changes in the superseding Indictment, Baines admitted more at the time of his later plea than his co-defendants, specifically that he possessed a firearm in furtherance of both the attempted robbery [sic] <u>and a drug trafficking offense</u>.

(Gov't's Resp. to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Gov't Resp.") at 7-8 [Doc. #215] (emphasis added).) In other

8

words, Baines had the opportunity to plead guilty to the charges in the initial indictment but, as is his right, chose not to do so.

His co-defendants later successfully challenged their § 924(c) convictions in light of United States v. Davis, 139 S. Ct. 2319 (2019), and were each resentenced at which time Thornton was also determined not to be a career offender. (Order & Judgment [Doc. #161 in 13CR255-1]; Am. Judgment [Doc. #180 in 13CR255-1]; Order & Judgment [Docs. #175, 176 in 13CR255-3; Am. Judgment [Doc. #199 in 13CR255-3].) Because Baines's § 924(c) conviction is based on conspiracy to commit Hobbs Act robbery and a drug trafficking offense, Davis is of no help to him. (See Order & Recommendation at 6 n.4.) His retrospective frustration is understandable, but his conviction for violating 18 U.S.C. § 924(c), unlike those of his co-defendants, was and is still valid.

Baines also argues that his sentence was driven by the Government's decisions about the type and quantity of drugs that would be in the stash house which made Baines a career offender. However, Baines was determined to be a career offender because of his criminal history and the instant offense of conviction. Although the basis upon which Baines challenges his career offender designation is not persuasive, he would no longer be a career offender were he sentenced today because Hobbs Act robbery is not a crime of violence under the Guidelines, United States v. Green, 996 F.3d 176 (4th Cir. 2021), and, thus, conspiracy to commit Hobbs Act robbery would not be. Instead of facing a Guidelines range of 262 to 327 months, Baines's Guidelines range would appear to

9

be 57 to 71 months plus a consecutive 60 months for a total range of 117 to 131 months, which is a significant difference, although not an "exceptionally dramatic" one, McCoy, 981 F.3d at 285.

According to the Government, "Baines'[s] co-defendants received an unanticipated break and he did not" and "this difference places [him] in a sympathetic light, particularly given that his underlying conviction of conspiracy to commit Hobbs Act robbery would not result in a career offender guideline range if sentenced today." (Gov't Resp. at 8-9.) Nevertheless, the Government contends that "[t[he lengthy sentence [Baines] ultimately received is not extraordinarily unfair in light of his criminal history and offense conduct." (Id. at 9.) The Court agrees.

In addition to challenging the fairness of his sentence, Baines relies on his completion of numerous programs while in custody and his participation in The Challenge Program and the MAT program. Since July 2015, Baines has been enrolled in courses nearly continuously despite the pandemic and being transferred among facilities. (See Inmate Education Data Tr. [Doc. #215-1]; see also Def.'s Reply at 7-14 (attaching Certificates of Completion) [Doc. #218].) They range from Understanding Basic Law to Computer Applications to Work Readiness to Advance Law to Basic Nutrition.

And, in 2020 and 2021, he participated in The Challenge Program which he describes as "a voluntary residential cognitive behavioral therapy program to address substance use and criminal lifestyle." Group programs included Rational

10

Thinking, Criminal Lifestyles, Communication Skills, Violence Prevention, Handling Difficult Situations, Anger Management, and Reviewing Your Drug Use. (Bureau of Prisons Psych. Servs. Grp. Participation [Docs. #217-1, 217-3].) His participation was noted as "Good" on a scale of good, fair, and poor, and his only absences were due to lockdowns, staffing shortages, and federal holidays. He also claims to be participating in the MAT program. "The term, Medication Assisted Treatment (MAT), is used to describe the addition of medication to counseling and behavioral therapy to treat opioid use disorder." Fed. Bur. of Prisons, Opioid Use Disorder: Diagnosis, Evaluation, and Treatment, Clinical Guidance, https://www.bop.gov/resources/pdfs/opioid_use_disorder_cg.pdf (Aug. 2021). Baines's continued participation in substantive programming despite his lengthy sentence and the difficulties of incarceration during a pandemic shows his determination to better himself.

He has struggled at times with abiding by prison rules, however, as evidenced by his infractions for possessing unauthorized money (October 2016), being in an unauthorized area (October and December 2017), being unsanitary or untidy (May 2018), possessing drugs/alcohol (September 2018), and using drugs/alcohol (October 2019). (Inmate Discipline Data [Doc. #215-2].)

He describes his mindset now as different than when he committed the instant offenses, says that he now has the tools to live a productive life, wants another chance to do so, and claims to have a job upon his release. Despite his disciplinary infractions, it does appear that Baines is working hard to prepare

11

himself to contribute to society upon release. As commendable as his efforts are, they are not extraordinary and compelling, even coupled with the other bases for his motion, as they are expected of all inmates, although not all inmates are as committed as Baines is.

In his reply to the Government's response, Baines asserts new additional bases for his motion – criticisms of his attorney's advice and challenges to the facts as recounted in the Presentence Report. Although a reply brief should not address new topics because the Government does not have an opportunity to respond, these new bases will be considered because Baines is proceeding pro se. Nevertheless, the Court has previously addressed and dismissed arguments very similar to those Baines makes in his reply.

In December 2019 and February 2020, he moved to amend his § 2255 motion "to add claims faulting counsel" for similar acts and omissions mentioned in his reply. (Compare Order & Recommendation at 9-10 [Doc. #190] (listing the alleged faults of counsel as telling Baines it was in his best interest to enter into a plea agreement and allowing the Government to supersede the indictment after Baines signed and reneged on a prior plea agreement, among other acts) with Def.'s Reply at 2-6 (describing information that Baines told his counsel and discussing the plea agreements).) Although the Court found such an amendment would be futile because it was untimely, it noted that "even if the Court were to entertain [Baines's] proposed new grounds for relief, they would fail on the merits . . . for being vague, conclusory, and unsupported, or, alternatively, for want of

12

prejudice." (Order & Recommendation at 12, 12 n.8.)  Thus, while the restrictions on § 2255 motions may not apply to § 3582(c)(1)(A)(i) motions, Baines had the opportunity to challenge the very things he now asserts but failed to do so in a timely fashion for purposes of a § 2255 motion.  There is nothing new about his attorney's performance that he could not have previously challenged in a timely § 2255 motion.

In addition, Baines had the opportunity not to enter a guilty plea to the superseding indictment, to challenge the facts as presented, and to tell the Court he was dissatisfied with his attorney.  However, at his change of plea hearing while under oath, Baines acknowledged that he and his attorney had worked through things and he was satisfied with his attorney's representation. (Tr. of Change of Plea Hr'g at 6.)  He also confirmed that he understood the superseding indictment and the charges he was facing, he had enough time to talk with his attorney about the case, he fully discussed the charges with his attorney, and he talked to his attorney about his situation, the evidence against him, any defense he may have, and the consequences of pleading guilty. (Id. at 5.)  His attorney identified specific objections to the factual basis but acknowledged that it still provided an independent factual basis for the guilty plea. (Id. at 18.)  Baines told the Court that he had had enough time to talk with his attorney about the written plea agreement and that he understood it. (Id. at 7-8.)  He confirmed that his attorney's summary to the Court of the plea agreement was an accurate summary of his agreement with the Government. (Id. at 9.)  After the Court explained the

13

elements of Count Three as they relate to the possession of firearms, Baines told the Court that he understood. (Id. at 11.) Finally, in response to the Court's statement, "I want to be absolutely sure you don't have any concerns or anything you want to raise with me", Baines said, "No. I'm all right." (Id. at 16-17.)

At his sentencing hearing, Baines agreed with his attorney that there were no objections to the Presentence Report, and it was adopted as to both the factual findings and the guideline application to those facts. (Tr. of Sentencing Hr'g at 2-3 [Doc. #91].) Later in the hearing, Baines disputed several facts in the Presentence Report, but after a recess, he retracted those objections. (Id. at 13-20.) In sum, nothing in Baines's reply constitutes an extraordinary and compelling reason to grant relief.

An assessment of the totality of the bases for Baines's motion – the ATF's former practice of creating sting operations whereby individuals would agree to rob drug stash houses that did not exist, the "inherent unfairness and injustice of his sentence" especially when compared to those of his co-defendants, his post-sentencing conduct, and criticisms of his attorney's advice – leads to the conclusion that he has not met his burden of showing that extraordinary and compelling reasons warrant relief. Even had he done so, the factors from 18 U.S.C. § 3553(a) counsel against release. A comparison of Baines to the defendants in McCoy helps to explain why.

Thomas McCoy was nineteen years old and only had one prior conviction – for reckless driving resulting in a $120 fine – at the time he committed the

14

robberies and violations of 18 U.S.C. § 924(c) for which he was incarcerated. McCoy, 981 F.3d at 277. Under the law at the time of his sentencing, § 924(c) permitted sentence-stacking which subjected McCoy to a mandatory thirty-two-year sentence consecutive to the sentence imposed for the robberies. Id. He had served over seventeen years of his thirty-five-year (421-month) sentence when he moved for compassionate release based on the First Step Act's elimination of sentence-stacking in § 924(c). Id. If he were sentenced under the First Step Act, his sentence would be less than half what it was, "a disparity of over 200 months." Id. at 278. The district court found that disparity, along with McCoy's age at the time of the offense and lack of relevant criminal history, made "the recidivist penalties of 'stacked' sentences particularly inappropriate." Id. And, while in custody, McCoy had "many educational and vocational achievements" and made "payments of nearly $10,000 towards a $38,209 restitution order shared among seven co-defendants." Id. Thus, after "an individualized application" of the factors from 18 U.S.C. § 3553(a), the district court found compassionate release appropriate.

Keith Bryant, Kittrell Decator, and Craig Scott were also convicted of robberies and § 924(c) violations and subject to sentence-stacking which resulted in a mandatory minimum sentence in each case of forty-five years consecutive to the robbery sentence. Id. The defendants were between twenty-two and twenty-four years old at the time of their offenses; Decator and Scott had no criminal history; and Bryant had one minor prior conviction and served no jail time. Id. Each

15

of them was sentenced to fifty-two to fifty-three years in prison. Id. After they had served approximately twenty-five years in prison, each defendant moved for compassionate release based on their rehabilitation and the change to § 924(c). Id. at 278-79. Were Bryant, Decator, and Scott sentenced under the First Step Act, each of their sentences would have been thirty years less than their original sentences. Id. at 279. In granting their motions, the district court "took into account [each of] the defendant's youth and minimal criminal history at the time of his offenses; his post-sentencing conduct and rehabilitation; and the fact that continued incarceration would be disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'" Id.

The Fourth Circuit Court of Appeals affirmed. As it explained, "[t]he First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one." Id. at 285. The court found

> that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act. [It] emphasize[d], as did the district courts, that these judgments were the product of individualized assessments of each defendant's sentence. And [the court] note[d] that in granting compassionate release, the district courts relied not only on the defendants' § 924(c) sentences but on full consideration of the defendant's individual circumstances. In particular, in determining that release was appropriate for all of the defendants, the courts focused on the defendants' relative youth – from 19 to 24 years old – at the time of their offenses, a factor that many courts have found relevant under § 3582(c)(1)(A)(i). Combined with the substantial sentences the defendants already had served at the time of their

16

> motions – from 17 to 25 years – that meant that each defendant had spent close to or more than half his life in prison. And during that time, as the district courts explained, each defendant had established excellent institutional records and taken substantial steps toward rehabilitation.

Id. at 286 (internal citations omitted).

Here, although Baines would no longer be a career offender were he sentenced today, the change in his sentence is not "exceptionally dramatic" like the nearly twenty to thirty years difference in sentences for the defendants in McCoy. In addition, Baines's age (approximately forty years old) and lengthy felonious criminal history (as described above) at the time of the instant offenses differ from the McCoy defendants. He has also had several disciplinary infractions while in custody, the most recent of which involved drugs and/or alcohol possession and use. As noted above, though, Baines has participated nearly continuously in courses and The Challenge Program and claims to be enrolled in the MAT program. It is hoped that these courses and programs will prevent Baines from recidivating and, therefore, protect the public from any further criminal conduct on his part.

At this time, though, his institutional record is insufficient to overcome his criminal history which reflects repeated incidents of felonious criminal conduct undeterred by opportunities for probation and parole or by lengthy terms of imprisonment, as described above. In addition, when Baines was previously in the Bureau of Prisons' custody, he incurred disciplinary infractions for lying or falsifying a statement, refusing to obey an order, assaulting without serious injury, and

17

phone abuse. He was released to a community corrections center, but was remanded to federal custody after he tested positive for marijuana and admitted to using heroin. And, as noted above, while on federal supervised release, he conspired to commit first degree burglary when he broke into a home occupied by three individuals in order to commit robbery with a dangerous weapon. Not only did he receive a term of imprisonment in state custody for the burglary, but he also received a consecutive term of imprisonment for violating his federal supervised release. He was released in July 2012 from the Bureau of Prisons only to become involved in the instant offense conduct in March 2013. And since being in the custody of the Bureau of Prisons, Baines has continued to struggle to abide by the rules.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Jermaine Lonnie Baines' pro se Motion for Appointment of Counsel to Perfect a Compassionate Release/Reduction in Sentence Motion Under § 3582(c)(1)(A)(i) [Doc. #214] is DENIED.

This the 9th day of March, 2022.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
